1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Antoinette Prear, | No. CV-17-02028-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill,<br>Acting Commissioner of Social Security, | |
| Defendant. | |

Pending before the Court is Plaintiff Antoinette Prear's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of her application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq. (2015). (Doc. 16 at 1.)[1] Plaintiff argues that the Administrative Law Judge (the "ALJ") erred in his evaluation of the medical opinion evidence and his evaluation of Plaintiff's subjective symptom testimony. The Court now rules on Plaintiff's appeal.

**I.     Background**

The parties are familiar with the background information in this case, and it is summarized in the ALJ's decision. (*See* Doc. 13-3 at 23, 25–29.) Accordingly, the Court will not restate such information here.

---

[1] Plaintiff filed an "Opening Statement," which Defendant and the Court construe as the Opening Brief. (Doc. 16.)

## II. Legal Standard

The ALJ's denial of disability benefits may be set aside "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). When considering the evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). "If the evidence can reasonably support either affirming or reversing the [ALJ]'s conclusion, the court may not substitute its judgment for that of the [ALJ]." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). This necessarily means that "[i]f the evidence can support either outcome, the Commissioner's decision must be upheld." *Benton*, 331 F.3d at 1035.

It is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon evidence discussed by the ALJ. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *see Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Thus, the Court's review is constrained only to "the reasons the ALJ asserts," and the evidence supporting those reasons. *See Connett*, 340 F.3d at 874; *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015). Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n.1 (9th Cir. 2000)

(en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (applying the principle to Social Security appeals). Thus, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

### A. Definition of a Disability

A claimant can qualify for Social Security disability benefits only if she can show that, among other things, she is disabled. 42 U.S.C. § 423(a)(1)(E). A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is disabled only if her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### B. The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential evaluation process for evaluating a claim of disability. 20 C.F.R. § 404.1520(a)–(f); *see also Benton*, 331 F.3d at 1034. Finding the claimant "disabled" or "not disabled" at any step ends the inquiry. 20 C.F.R. § 404.1520(a)(4). If such a finding cannot be made at a particular step, then the ALJ moves on to the next step. *Id.* The claimant bears the burden of proof for steps one to four, but the burden shifts to the Commissioner for step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. *Id.*

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). "If [the claimant] do[es] not have a severe

medically determinable physical or mental impairment . . . we will find that [the claimant is] not disabled." *Id.* A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). Examples of basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgement; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.* § 404.1522(b)(1)–(6).

Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509 (incorporated by reference in *id.* § 404.1520(a)(4)(ii)).

At the third step, having found a medically determinable impairment, the ALJ considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This consideration requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If the impairment meets or equals a listed impairment, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's "residual functional capacity" ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting. [The claimant's] residual functional capacity is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* § 404.1545(a)(1).

At the fourth step, the ALJ considers the claimant's ability to perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this the ALJ compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and last step, the ALJ considers if the claimant can "make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity and the claimant's age, education, and work experience. *Id.* If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled.

In making a determination on the claimant's disability through the five-step process, the ALJ must "consider all evidence in [the claimant's] case record." *Id.* § 404.1520(a)(3). This evidence includes medical opinions, records, self-reported symptoms, and third-party reporting. *See Id.* §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Evaluation Under the Five-Step Process

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2014 and that Plaintiff suffered from two severe impairments,[2] satisfying the first and second steps of the process. (Doc. 13-3 at 25.)[3] Under the third step, the ALJ found that Plaintiff does not have "an impairment or combination of impairments that

---

[2] The ALJ found that Plaintiff has the following severe impairments: essential hypertension and monoclonal gammopathy. (Doc. 13-3 at 25.) The ALJ also found that Plaintiff has the following "nonsevere" impairments: fibromyalgia and neuropathy. (*Id.*) The ALJ found that these "nonsevere" impairments "do not have more than a minimal effect on the claimant's ability to perform basic work activities." (*Id.*)

[3] Plaintiff was examined by two state agency consultants regarding the possibility of a psychiatric medically determinable impairment. (Doc. 13-3 at 26.) Both consultants found that Plaintiff had mild limitations due to psychiatric impairments. (*Id.*) The ALJ gave little weight to the medical opinions of these consultants because there is little psychiatric evidence on the record and Plaintiff did not receive psychiatric treatment. (*Id.*) Because there was no psychiatric diagnosis from a medically acceptable source, the ALJ found no psychiatric medically determinable impairment was established. (*Id.*)

meets or medically equals the severity of one of the listed impairments" in the Social Security regulations that automatically result in a finding of disability. (*Id.* at 26.)

The ALJ then conducted the RFC determination with "careful consideration of the entire record." (*Id.* at 27.) The ALJ determined that Plaintiff has the RFC to "perform a wide range of light work . . . except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday; and must work in a climate controlled environment out of heat." (*Id.*)

At step four, the ALJ compared Plaintiff's RFC with the physical and mental demands of Plaintiff's past relevant work. (*Id.* at 29.) The ALJ determined that Plaintiff "is capable of performing past relevant work as an insurance agent . . . , medical secretary . . . , and admissions representative." (*Id.*) The ALJ went on to state that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*)

Because the ALJ found that Plaintiff can still perform her past relevant work, the ALJ found that Plaintiff was not "under a disability, as defined in the Social Security Act." (*Id.*) Because the ALJ found that Plaintiff was not disabled at step four, the ALJ did not move on to step five. (*Id.*)

## III. Analysis

Plaintiff asserts that the ALJ erred in denying her benefits for two reasons: (1) the ALJ improperly evaluated the medical opinion evidence and (2) the ALJ failed to reasonably evaluate Plaintiff's subjective symptom testimony. (Doc. 16 at 1.)

### A. Whether the ALJ Improperly Evaluated the Medical Opinion Evidence

The Court first turns to Plaintiff's argument that the ALJ improperly "failed to consider the treating Physicians['] opinions." (*Id.*)

#### 1. Legal Standard

The Ninth Circuit distinguishes between the opinions of three types of physicians: (1) those who treat the claimant ("treating physicians"); (2) those who examine but do not

treat the claimant ("examining physicians"); and (3) those who neither examine nor treat the claimant ("non-examining physicians"). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996). A treating physician's opinion is entitled to "substantial weight." *Bray*, 554 F.3d at 1228.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). An ALJ may reject the uncontradicted opinion of a treating physician, but to do so the ALJ must state "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). If a treating physician's opinion is contradicted by an examining physician, then the ALJ may reject the treating physician's opinion only if there are "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Bray*, 554 F.3d at 1228).

**2. Analysis**

Plaintiff argues that the ALJ "failed to consider the treating Physicians['] opinions." (Doc. 16 at 1.) However, Plaintiff does not present any specific arguments or facts to support such a claim. (*See id.*) Ordinarily, the Court will not address an issue if a party fails to argue that issue with specificity in their brief. *Carmickle*, 533 F.3d at 1161 n.2. *See Paladin Assocs., Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (holding courts "ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief"). Of course, this practice is relaxed when a party is proceeding *pro se*. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When

a party's brief is filed *pro se*, it is "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citations omitted).

Plaintiff filed her initial brief *pro se*. (*See* Doc. 16 at 1.) Because her brief was filed *pro se*, the Court is inclined to construe it liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. Thus, the Court will examine the ALJ's alleged failure to consider the treating physicians' opinions, even though Plaintiff has failed to present specific arguments or facts to support her claim.

Here, the ALJ described Dr. McClinton and Dr. Abankwu as treating physicians. (Doc. 13-3 at 28.)[4] Both treating physicians list significant limitations that would impede Plaintiff's ability to perform her past relevant work in their opinions. (*Id.*) These limitations include sitting and standing-walking less than one hour in an eight hour workday and a likelihood of missing multiple days of work per month. (*Id.*) The ALJ listed Dr. Heller as an examining physician. (*Id.*) The examining physician found no limitations that would impede Plaintiff's ability to perform her past relevant work in his opinion. (*Id.*) Thus, the opinions of the treating physicians are contradicted by the opinions of an examining physician. To reject the opinions of the treating physicians in favor of the opinion of an examining physician, the ALJ must only provide "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164.

The ALJ gave the examining physician's opinion "great weight . . . because the medical evidence substantiates it and because [the examining] doctor is well-versed in the assessment of functionality as it pertains to the disability provisions of the Social Security

---

[4] The ALJ described Dr. Abankwu as a treating physician. (Doc. 13-3 at 28.) Yet, the medical records evaluated by the ALJ indicate that Dr. Abankwu is an examining physician as he only examined Plaintiff once. (Doc. 13-12 at 93); s*ee* 20 C.F.R. §§ 404.1527, 416.927. However, because Dr. Abankwu and Dr. McClinton gave similar opinions and the ALJ discounted both opinions on the same grounds, the ALJ's description of Dr. Abankwu is not material to the Court's analysis herein. (*See* Doc. 13-3 at 28.)

Act Regulations." (Doc. 13-3 at 28.) The ALJ also determined that the examining physician's opinion should be afforded more weight because it was "consistent with [Plaintiff]'s ability to do household chores and cook." (*Id.*) Conversely, the ALJ gave the treating physicians' opinions less weight stating that "their opinions are not consistent with the medical evidence and [Plaintiff]'s daily activities." (*Id.*)

### a. Medical Evidence

An ALJ can give a treating physician's opinion less weight if it is "inconsistent with other substantial evidence in the record." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The treating physicians found that Plaintiff's significant limitations spring from a myriad set of diagnoses including fibromyalgia and peripheral neuropathy. (Doc. 13-9 at 117; Doc. 13-12 at 93; Doc. 13-10 at 40.)

The ALJ discounted the treating physicians' diagnoses of Plaintiff's fibromyalgia based upon a single consultation report from Dr. Unzek who appears to have only seen Plaintiff once. (Doc. 13-3 at 26; Doc. 13-10 at 89–92.) The only reason provided by the ALJ for discounting the diagnoses of fibromyalgia was that Dr. Unzek found Plaintiff did not have "a significant number of trigger points" needed to meet the diagnosis of fibromyalgia. (Doc. 13-3 at 26.) While an opinion that Plaintiff lacked the necessary number of trigger points to support the diagnoses of fibromyalgia in a single examination is a specific reason, it is not a legitimate reason to discount a diagnosis of fibromyalgia. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (holding that several tests yielding normal results were not enough to overturn a treating physician's diagnosis of fibromyalgia because the symptoms of fibromyalgia "wax and wane" and an examination of "longitudinal records" is needed to determine if a patient has fibromyalgia); s*ee also Orn*, 495 F.3d at 630 (holding that, in determining if substantial evidence supports a decision, a court may not isolate a "specific quantum of supporting evidence").

The ALJ further stated that Plaintiff's peripheral neuropathy was "very mild" and "treated with Cymbalta." (Doc. 13-3 at 26.) The ALJ, though, did not provide any additional specific information on why this medical evidence was not consistent with the

treating physicians' diagnoses. (*See* Doc. 13-3 at 26–28.) The ALJ neglected to state why this medical evidence contradicts the diagnoses from the treating physicians or counters their determinations of Plaintiff's limitations. (*See id.*)

Moreover, the ALJ found that Plaintiff's "hypertension can be controlled and her vision was noted to be stable." (Doc. 13-3 at 28.) However, the ALJ did not specify how these facts contradict the findings of Plaintiff's treating physicians. Because the ALJ did not set out a "detailed and thorough summary of the facts and conflicting clinical evidence" to support his decision to afford less weight to the treating physicians' diagnoses, the ALJ failed to assert specific and legitimate reasons for why the medical evidence is not consistent with the treating physicians' opinions. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

### b. Daily Activities

An ALJ may take into account a patient's daily activities when determining what weight to give a treating physician's opinion. *See Revels*, 874 F.3d at 664 (examining if plaintiff's daily activities were consistent with treating physician's testimony to determine if ALJ gave a specific and legitimate reason for giving less weight to that treating physician's opinion). The treating physicians found that Plaintiff was limited to sitting for about one hour in an eight-hour workday, standing-walking for about one hour in an eight-hour workday, carrying up to ten pounds only occasionally, and limited in lifting, handling, and fingering. (Doc. 13-3 at 28.) The ALJ noted that these opinions were not consistent with Plaintiff's daily activities of taking care of plants, preparing meals, and doing household chores. (*Id.*) The ALJ went on to say that Plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (*Id.*)

It is true that Plaintiff admits to being able to perform certain daily activities such as taking care of plants, preparing meals, and doing household chores. (Doc. 13-10 at 3; Doc. 13-7 at 37.) However, the ALJ failed to provide specific and legitimate reasons as to why the ability to perform these daily activities weakens the legitimacy of the treating

physicians' opinions. (*See* Doc. 13-3 at 28.) There are "critical differences between activities of daily living and activities in a full-time job." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). "[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ did not provide an explanation for why Plaintiff's ability to conduct daily home activities would necessarily prove Plaintiff's ability to conduct work activities. (*See* Doc. 13-3 at 28.) Thus, the ALJ failed to provide specific and legitimate reasons for why Plaintiff's daily activities are not consistent with the treating physicians' opinions.

### 3. Conclusion

Although treating physicians' opinions are not binding on an ALJ, the ALJ erred in rejecting the opinions of Plaintiff's treating physicians without providing specific and legitimate reasons for doing so. While the ALJ did state reasons for rejecting the opinions of the treating physicians, the ALJ failed to ensure these reasons rose to the required level of "specific and legitimate." *Carmickle*, 533 F.3d at 1164. Accordingly, the ALJ erred in part in rejecting the opinions of the treating physicians.

### B. Whether the ALJ Failed to Reasonably Evaluate Plaintiff's Subjective Symptom Testimony

The Court next turns to Plaintiff's argument that the ALJ failed to reasonably evaluate Plaintiff's subjective symptom testimony. (Doc. 16 at 1.)[5]

### 1. Legal Standard

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison*, 759 F.3d at

---

[5] Similar to Plaintiff's claim that the ALJ improperly evaluated the medical opinion evidence, Plaintiff does not clearly provide specific arguments and facts to support her second claim. (*See* Doc. 16 at 1.) However, because Plaintiff filed her brief *pro se*, the Court will construe it liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. Thus, the Court will examine the ALJ's alleged failure to reasonably evaluate Plaintiff's subjective symptom testimony, even though Plaintiff has failed to present specific arguments or facts to support her claim. *See supra* Part III.A.2.

1014.[6] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). At this step, a claimant is not required to show "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Additionally, a claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

Second, if the claimant satisfies the first step of the analysis, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). "Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, [the ALJ] may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *see Lingenfelter*, 504 F.3d at 1036. The ALJ may not fulfill this requirement by making general findings; "rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "The clear and convincing standard is the most demanding requirement in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002).

In assessing a claimant's credibility, an ALJ may consider a range of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately

---

[6] SSR 96-7p lays out the two-step process an ALJ must follow. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). SSR 96-7p was superseded by SSR 16-3p, but SSR 16-3p has an effective date of March 16, 2016. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). However, the ALJ issued his opinion on January 25, 2016, before the effective date of SSR 16-3p. Accordingly, the Court will use SSR 96-7p as guidance when evaluating Plaintiff's subjective symptom testimony.

explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Other factors that an ALJ may consider when determining the credibility of a claimant's symptoms include: the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate the symptoms; medications taken and treatments received for symptom relief; any other measures for symptom relief; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 96-7p, 1996 WL 374186, at *3. If evidence reasonably supports either confirming or reversing the ALJ's decision, the Court "may not substitute [its] judgment for that of the ALJ." *Ghanim*, 763 F.3d at 1163 (quoting *Batson*, 359 F.3d at 1196).

### 2. Analysis

In the first step, the ALJ found "that [Plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Doc. 13-3 at 28.) Moreover, the ALJ made no apparent finding of malingering based on the affirmative evidence. (*See id.*) However, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (*Id.*) Because the ALJ found Plaintiff's statements not credible, the ALJ must make "specific findings as to credibility and stat[e] clear and convincing reasons for each." *Robbins*, 466 F.3d at 883.

Plaintiff argues that the ALJ improperly rejected her testimony about the severity of her symptoms because she did not appear to be disabled. (Doc. 16 at 1.) However, the ALJ did not indicate that his credibility analysis was based on Plaintiff's appearance. (Doc. 13-3 at 23–29.) The ALJ provided that his credibility analysis was based upon Plaintiff's daily activities and the medical evidence.

#### a. Daily Activities

The Ninth Circuit holds it appropriate to consider a claimant's daily activities as a factor in assessing a claimant's subjective symptom testimony. *See Revels*, 874 F.3d at

667–68; s*ee also* SSR 96-7p, 1996 WL 374186, at *3 (stating that in evaluating a claimant's subjective symptom testimony, an ALJ must consider "medical *and other* evidence" (emphasis added)). While the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits," *Smolen*, 80 F.3d at 1284 n.7, an "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting," *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citation omitted). Moreover, even if the daily activities undertaken by the claimant "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

Here, the ALJ stated that Plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Doc. 13-3 at 28.) Specifically, the ALJ cited Plaintiff's ability to take care of plants, prepare meals, and do household chores as undermining her subjective symptom testimony. (*Id.*) However, the ALJ did not specifically state "clear and convincing reasons" to support his finding that Plaintiff's daily activities undermined her subjective symptom testimony. (*See id.*); *Robbins*, 466 F.3d at 883. While Plaintiff does engage in a number of daily home activities, "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; s*ee also supra* Part III.A.2.b. In arguing that Plaintiff's ability to undertake daily activities undermines her subjective symptom testimony, the ALJ failed to clarify how Plaintiff's ability to water and trim plants, spend forty-five minutes preparing meals, and spend two or three hours a day doing unspecified household chores contradict Plaintiff's claims that her symptoms prohibit her from working. (*See* Doc. 13-10 at 3; Doc. 13-7 at 37–38.) Thus, the ALJ failed to state "clear and convincing reasons" to support his finding that Plaintiff's daily activities undermined her subjective symptom testimony. *Robbins*, 466 F.3d at 883.

### b. Medical Evidence

The ALJ determined that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Doc. 13-3 at 28.) While an ALJ can consider a lack of medical evidence as a factor in his credibility analysis, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). The reasoning behind this rule is that "[s]ymptoms cannot be measured objectively through clinical or laboratory diagnostic techniques." SSR 96-7p, 1996 WL 374186, at *6.

Because the ALJ's reasons for rejecting Plaintiff's subjective symptom testimony based on Plaintiff's daily activities were not clear and convincing, the objective medical evidence alone "is not sufficient to support the ALJ's credibility finding as to [P]laintiff's pain and symptom statements associated with [her] physical impairments." *Strawn v. Berryhill*, No. 2:16-CV-3249-HRH, 2017 WL 3393403, at *7 (D. Ariz. Aug. 8, 2017). Thus, the ALJ's analysis of the medical evidence alone cannot support the ALJ's rejection of Plaintiff's subjective symptom testimony.

### 3. Conclusion

The ALJ erred in his credibility determination by failing to state, with specificity, clear and convincing reasons as to why Plaintiff's daily activities undermined her subjective symptom testimony. The record reflects that Plaintiff engages in activities such as taking care of plants, preparing meals, and household chores, but the ALJ did not state how the ability to undertake these activities translates into the workplace. *See Fair*, 885 F.2d at 603. Because the ALJ erred in his credibility determination regarding Plaintiff's daily activities, the medical evidence alone is not enough to reject Plaintiff's subjective symptom testimony. *See Burch*, 400 F.3d at 680. Accordingly, the ALJ erred in part in discrediting Plaintiff's subjective symptom testimony.

### D. Remand

"[A]dministrative adjudications are subject to the same harmless error rule as

generally applies to civil cases." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 406 (2009)). Reversal due to error requires a determination of prejudice. *Id.* In determining prejudice, the Court must analyze the error "in light of the circumstances of the case." *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). The question the Court must answer when the ALJ has erred is "whether the ALJ's decision remains legally valid, despite such error." *Carmickle*, 553 F.3d at 1162.

The ALJ's reasoning regarding the treating physicians' opinions and Plaintiff's subjective symptom testimony was erroneous, and these errors are integral to the fair determination of benefits. The ALJ erred in failing to assert specific and legitimate reasons for why the medical evidence is not consistent with the treating physicians' opinions. While the ALJ did cite to specific evidence to support his finding regarding Plaintiff's diagnoses, the evidence cited by the ALJ did not appear to take into account the "record, read as a whole." *Gallant*, 753 F.2d at 1453.

Additionally, the ALJ erred in failing to assert specific and legitimate reasons for why Plaintiff's daily activities are not consistent with the treating physicians' opinions. Specifically, the ALJ failed to support the contention that Plaintiff's ability to take care of plants, prepare meals, and do household chores runs counter to the treating physicians' diagnoses.

The ALJ also failed to assert clear and convincing reasons for why Plaintiff's daily activities undermine her subjective symptom testimony. "The clear and convincing standard is the most demanding requirement in Social Security cases," *Moore*, 278 F.3d at 925, and the minimal information provided by Plaintiff and cited by the ALJ regarding Plaintiff's daily activities is not enough to meet this standard.

Having found that the ALJ committed harmful error, the Court has discretion to remand the case for further development of the record or for an award of benefits. *Reddick*, 157 F.3d at 728. "Where remand would unnecessarily delay the receipt of benefits, judgement for the claimant is appropriate." *Garrison*, 759 F.3d at 1020 (quoting *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988)). When

1 determining if an award of benefits is warranted, the Ninth Circuit uses a "credit-as-true" rule. *Id.* The Court should credit evidence that was rejected by the ALJ as true and remand to the ALJ with instructions to calculate and award benefits if:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.*

Even if all requirements are met, "the credit-as-true rule may not be dispositive of the remand question in all cases." *Id.* Instead, the credit-as-true rule envisions "some flexibility." *Connett*, 340 F.3d at 876. This flexibility "is properly understood as requiring courts to remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Considering "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules," the Court finds that "further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014) (citation omitted). Thus, remand is necessary so the record may be developed to: (1) include specific findings on the treating physicians' diagnoses based upon the *entire* medical record; (2) provide specific reasons regarding why Plaintiff's daily activities undermine or support the treating physicians' diagnoses; and (3) evaluate Plaintiff's daily activities and their ability to translate to the workplace.

///
///
///
///
///

**IV. Conclusion**

For the reasons stated above,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **VACATED**, and the case is **REMANDED** to the agency for further proceedings. The Clerk of Court shall enter judgment accordingly.[7]

Dated this 17th day of July, 2018.

_____
James A. Teilborg
Senior United States District Judge

---

[7] To the extent a mandate is required, the judgment shall serve as the mandate in this case.